A. M. BOATRIGHT AND WIFE V. F. O. PECK AND OTHERS.

1. B. executed to P. an absolute conveyance of land for the consideration of $1000, and at the same time they executed a joint instrument stipulating that B. should have the privilege of repurchasing the premises for the same price at any time within twelve months, and should remain in possession and pay rent to P. at the rate of forty dollars per month, until such repurchase or the expiration of the twelve months. B. kept possession eleven years and paid over $1200 as rents, and P.'s heirs then sued him in trespass to try title to recover the land. *Held*, that whether the conveyance and the concurrent instrument constituted a mortgage.

or not was a question of law for the court to decide, and it was error to submit their legal effect to the jury. *Held*, further, that the two concurrent instruments do constitute a mortgage; that the reservation of rent was but a device to screen usury, and the amounts paid as rents are applicable in satisfaction of the debt. And it appearing that the debt has been extinguished by the payments so made, this court renders final judgment in favor of B., decreeing him full title, free from the lien, and cancelling the conveyance and concurrent instrument.

APPEAL from Goliad. Tried below before the Hon. Wesley Ogden.

The facts are shown in the opinion of the court, so far as pertinent to the rulings. A rehearing was asked and refused.

*James Martin*, with whom was *F. H. Merriman*, and *Sherwood & Flournoy*, for the appellant.—Both instruments taken together form a mortgage, for although a deed may be absolute on its face, yet if, at the time of the execution of the deed, there is also an agreement giving the vendor the right of redemption or repurchase, although the agreement may be in a separate instrument, the two must be taken together, and will only operate as a mortgage. Wherever the right of redemption exists, the conveyance operates only as a mortgage. (Stampers v. Johnson, 3 Tex. R., 4; Carter v. Carter, 5 Tex. R., 100; Sampson & Keen v. Williams, 6 Tex. R., 102; Stephens v. Sherwood, 6 Tex. R, 294; Howard v. Davis, 6 Tex. R., 175; Wood v. Taylor, 7 Tex. R., 16; Stone v. Varnell, 20 Tex. R., 118; Gouhenant v. Cockrell, 20 Tex. R., 99; Kent's Commentaries, vol. 4, 142; 4 Johnson's Reps., 186; 4 Pickering Reps., 349; 5 Pickering Reps., 189; 13 Pickering Reps., 411 and 415; 14 Pickering Reps., 467; Mass. Reps., vol. 2, 499; Mass. Reps., vol. 5, 109; Mass. Reps., vol. 8, 159.)

The case of Thompson v. Chumney (8 Tex. R., 389) does not controvert this opinion, and if it does it has been overruled by the later decisions. (See also Fowler v. Stoneum, 11 Tex. R., 510.)

The contract made between appellants and Barton Peck, taken by itself, would be a conditional sale from Peck to appellants, but the two taken together constitute a mortgage; and as it was the province of the court to construe the legal effect of the written evidence, the suit being trespass to try title, the court should have declared the two instruments of writing a mortgage, and have sustained the demurrer.

*Pryor Lea*, for the appellees.—At first, the petition had a single aspect, claiming a recovery of the premises on the specified title, and of damages. Appellants excepted in general terms, assuming the doctrine, that the exhibited papers of themselves made out a case of mortgage and negatived the right to recover as claimed in the petition. So the pleadings raised the question, whether the papers in law necessarily constituted a mortgage.

Appellees readily concede, that the two papers, dated twenty-third August, 1855, constitute one entire contract. One paper purports an absolute conveyance, with general warranty; another recites the former, and purports, first, a privilege to repurchase, and second, a lease to the vendors. The two instruments constitute an executed sale, on present payment in cash, precluding the idea of previous debt, and without terms for future indebtedness. The second paper recognizes title and possession of the purchaser, while it places the vendors in possession as mere tenants, expressly holding for the purchaser. To this contract, most thoroughly executed, there was a single condition, that the vendors might repurchase within twelve months by payment of one thousand dollars. Failure to perform this condition would necessarily leave the sale without condition, the title and possession then pertaining absolutely to the purchaser, and each particular being established by the written contract, operating as an estoppel of the vendors in all respects, and particularly conveying the title by the absolute deed acknowledged by the vendors, husband and wife, so as to

divest their title to their homestead. The petition exhibited the writings, and then averred failure to perform the condition. According to the literal import of the writings, unquestionably they make a simple and plain case of conditional sale, and the alleged failure completes a showing of absolute title in appellees. On this view of the case, the court did not err in overruling the exception first taken to the petition.

Although appellants do not controvert such literal import of the writings, yet in support of the exception it is strenuously contended that the writings have a legal import essentially different from their literal import, making, by construction, a case of mortgage.

Such paramount construction, if maintained, would have to overcome several legal postulates. The owner of property may sell it in any legal mode. Conditional sale is a legal mode of disposal ; contract supersedes construction ; writing is to be taken according to its expression, unless overcome by supervening legal evidence.

But the exception assumes that the expression of these writings is superseded without supervening proof of a different intention, by an arbitrary and conclusive construction. And for such assumption many cases are cited.

Appellees do not deem it necessary for them to comment on such cited cases in detail. All may be met by brief general remarks and a few decisive authorities. It is admitted that some judges have gone so far as to overrule contract by construction; and the doctrine of paramount construction has been entertained on the Supreme bench of Texas to some extent, especially in arguments connected with other controlling considerations. A review of the cases would show that this doctrine has been used incidentally and collaterally in connection with independent proofs, in arguments to make out a purpose of trust or use not disclosed by writings; but the independent proofs afforded the controlling considerations

of the decisions, and the arguments on construction amounted to
no more than individual views, not recognized as portions of the
actual adjudications.   On the contrary, the Texas decisions, in
general, maintain the literal import of language in contracts,
unless overcome by admissible evidence.   And this general rule is
affirmed habitually in the cited cases and in all kindred cases
wherever parol evidence is admitted to show the object of a written
contract, presupposing the necessary effect of the literal import,
unless overcome by external evidence.

The very doctrine that parol evidence may show the real inten-
tion, is supplanted by such construction as supersedes a necessity
for parol evidence.   When construction is conclusive in law, parol
proof is not admissible as to fact.   But the cited cases show that
parol proofs were admitted, and that they were the foundations of
decisions whenever literal imports were overcome, while the incom-
patible portions of the arguments on construction were never
allowed to be decisive.

In fact there is palpable inconsistency in an argument which
partly relies on a conclusive construction of law, and partly on
parol proof, to make out the legal conclusion, which excludes ex-
trinsic proof.   But this course of argumentation, both on the
bench and the bar, has been decisively rejected by the Supreme
Court of this State.   In the case of Thompson v. Chumney, 8
Tex. R., 393, a majority of the court held that the writings con-
stituted a conditional sale.   The dissenting judge elaborated the
argument, which is now reiterated in behalf of appellants.   But
the court did not construe the writings to be a mortgage, although
they presented a perfect case for doing so, if the law had justified
such adjudication.   That case showed two writings, of one date—
a bill of sale of a negro, and an obligation of the purchaser
to reconvey, for same price, if the vendor should refund it within
a limited time.   And the period first allowed for the repurchase
was extended by another similar obligation.   The decision in that

case stands as established law, for it has not been overruled, and the principle of the decision certainly covers the case now under consideration. Many other authorities might be readily adduced to show that the writings, in the present case, constituted a conditional sale, without any apparent characteristic of a mortgage, but only the following will be added: 4 Kent's Com., 161; Lucket v. Townsend, 3 Tex. R., 129; Fowler v. Stoneum, 11 Tex., 508.

DENISON, J.—This is a suit of "trespass to try title," brought on the fifteenth of October, 1866, by Francis O. Peck, the widow of Barton Peck, who was subsequently, by amendment, joined with the heirs of Barton Peck, for the recovery of four lots in the town of Goliad.

The plaintiffs set out in their petition a deed under which they claim title. This instrument purports to be an absolute conveyance from A. M. Boatright and E. M. Boatright, his wife, of the four lots and the improvements thereon, the same being their homestead and occupied by them; and was duly executed and acknowledged as a conveyance of their homestead to Barton Peck, on the twenty-third day of August, 1855. At the same time and place, there was executed a written agreement between Barton Peck and A. M. Boatright and his wife E. M. Boatright, which is as follows:

"This agreement, between Barton Peck, of the first part, and A. M. Boatright and his wife Eliza Maria Boatright, of the second part, witnesseth, as follows: Whereas, the parties of the second part have this day sold to the party of the first part, lots one, two, three and four, in block six, of range D, in the town of Goliad, in Goliad county, of the State of Texas, embracing the homestead of the parties of the second part, for the price of one thousand dollars. Now, it is agreed, that the parties of the second part have the privilege for themselves, their heirs and assigns, of repurchasing said premises from the party of the first part,

his heirs or assigns, for the same price, at any time within twelve months from the date hereof, but not afterwards, and in the meantime, until such repurchase, or the expiration of said twelve months, the party of the first part leases to those of the second part, the premises aforesaid, at the rate of forty dollars per month, for whatever the time may be, to be paid in monthly instalments, as the rent may be due at the end of each month from this date, and any fraction of a month that may be at the close of the term, to be paid for promptly.

"In testimony whereof the several parties hereto subscribe their names and affix their seals, this twenty-third day of August, 1855, and done in duplicate—one for each party.

"A. M. BOATRIGHT, [Seal.]

"E. M. BOATRIGHT, [Seal.]

"BARTON PECK, [Seal.]

"A. N. SMITH,

"B. DONNELLY."

This case was continued from term to term, until the August term, 1868, when a trial was had and the jury rendered the following verdict:

"We, the jury, find for the plaintiffs, that they recover the premises described in the petition, on the ground that the plaintiffs are absolutely entitled thereto." Upon this verdict was rendered a judgment that the plaintiffs recover the property of the defendants, and that a writ of possession issue.

Appellants assign various errors, only one of which it is necessary to examine, namely—that the court erred in its instructions to the jury. Among other things, the court charged as follows: "In this cause the jury, in making up their verdict, should first consider and determine whether the instrument set out in plaintiffs' petition, as a deed from Boatright and wife to Peck, was intended by the parties thereto to be a *bona fide* deed, conveying absolutely the title to the premises described, or whether it was

intended as a mortgage to secure the payment of a certain sum of money; and should the jury come to the conclusion, after carefully weighing all the evidence and circumstances of the case, that the deed was intended by the parties to be an absolute conveyance, then they will simply find for the plaintiffs, the land and premises described in plaintiffs' petition." This charge is erroneous, because it directed the jury to judge of the legal effect of the deed and defeasance, which was the province of the court to have done, leaving the facts alone to be found by the jury. The legal construction of these two instruments, whether they constituted a mortgage or not, was a question of law to be decided by the court. The question of the existence and execution of these two instruments was a fact to be left to the jury to decide.

This erroneous charge may have, and probably did lead the minds of the jury to the verdict they rendered. For this error, the verdict should have been set aside by the court below. The judgment, therefore, is reversed, and this court proceeds to render such judgment as should have been rendered in the court below.

The deed conveying the homestead to Peck, and the contract for reconveyance having been executed at the same time by the same parties, and having reference to the same property and calling for the same amount of money, viewed together and taken with the fact that the parties conveying the property remained in possession, constitute a mortgage, securing the payment of one thousand dollars loaned by Peck to Boatright. The lease, with rent at forty dollars per month, was a device to receive a greater premium or rate of interest than twelve per cent. per annum, and consequently the contract was usurious, and all the interest which was represented by rent was forfeited; and by the rules of equity adopted by this court, all the interest paid upon an usurious contract is credited upon the principal debt.

The record shows that Boatright paid to Peck, at various times prior to the first of January, 1857, the sum of $640 as rent, and

also, previous to the thirteenth of November, 1857, the further sum of $653 92, which two sums, added together, amount to $1293 92. This sum extinguishes the original debt of $1000, and leaves a balance of $293 92.

It is therefore adjudged and decreed that the appellants, A. M. and E. M. Boatright, be quieted in their possession of lots one, two, three and four, in block six of range D, in the town of Goliad, in Goliad county, and that the said A. M. Boatright be decreed to have full title in and to said property, and that the same stand discharged from all liability and lien created by the said deed and agreement, bearing date twenty-third of August, 1855, and that the said deed and agreement be canceled; and that the appellants do have and recover from the appellees all costs in this behalf expended, for which execution may issue.

Reversed and rendered.